UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MICHALSKI,

    Plaintiff,

v.

TROOPER SONSTROM, et al.,

    Defendants.

_____/

Case No: 17-10307
Honorable Victoria A. Roberts

**ORDER: (1) GRANTING IN PART AND DENYING IN PART CATES
AND CITY OF TAYLOR'S MOTION FOR SUMMARY JUDGMENT [ECF No. 30];
(2) DENYING SONSTROM'S MOTION FOR SUMMARY JUDGMENT [ECF No. 32];
and (3) DISMISSING CITY OF TAYLOR FROM THE ACTION**

**I.    INTRODUCTION**

Plaintiff Michael Michalski ("Michalski") filed this case against Michigan State Police Trooper Benjamin Sonstrom ("Sonstrom"), Taylor Police Detective Christopher Cates ("Cates"), the City of Taylor (the "City"), and three unidentified John Doe officers.

The only remaining claims are Fourth Amendment excessive force claims against Sonstrom, Cates and the John Doe officers, and a municipal liability claim against the City.

Before the Court are two fully briefed summary judgment motions, one by Sonstrom and one by Cates and the City. Both officers argue they did not use excessive force, and that they are entitled to qualified immunity.

The Court **DENIES** Sonstrom's motion. Cates and the City's motion is **GRANTED** with respect to the City and **DENIED** as to Cates. The City is **DISMISSED** from the case.

Moreover, the Court **DISMISSES** the John Doe officers; Michalski has not identified those officers, and he appears to have abandoned his claims against them.

## II. ANALYSIS

The Court thoroughly reviewed the complaint, the briefs, the deposition transcripts, Sonstrom's patrol car video of the incident, and all other exhibits. The Court finds it unnecessary to recite the facts exhaustively here. Similarly, the Court need not recite the governing law and standards for qualified immunity and a Fourth Amendment excessive force claim; the Court incorporates by reference the law and standards set forth in *Baker v. City of Hamilton, Ohio*, 471 F.3d 601 (6th Cir. 2006).

The parties dispute many of the underlying facts relevant to Michalski's claims. However, in deciding these motions, "the court must view the evidence and draw all reasonable inferences in favor of the non-moving party." *See Baker*, 471 F.3d at 605 (citation omitted).

### A. Genuine Issues of Material Fact Preclude Summary Judgment on Michalski's Excessive Force Claims Against Cates and Sonstrom

With respect to Sonstrom and Cates, genuine issues of material fact preclude summary judgment; specifically, questions of fact exist concerning the amount and type of force Sonstrom and Cates used and whether Michalski had surrendered, was surrendering, or was resisting arrest.

Viewing the record and patrol car video in the light most favorable to the non-moving party – as required – the facts show that: (1) Michalski had surrendered or was surrendering at the time Sonstrom and Cates forcibly removed him from the car and violently threw him to the ground; (2) Michalski did not resist arrest, yet the officers struck him numerous times in the head, neck, back and legs, while continuing to push/force him to the ground; and (3) Sonstrom tasered Michalski two times, and then one of the officers handcuffed him.

Because a jury could find that Michalski had surrendered or was surrendering before the officers removed him from his car and violently threw him to the ground, a reasonable jury could conclude that the officers' decision to throw Michalski to the ground, their decision to strike him on his head and body, and Sonstrom's decision to taser him twice were unreasonable, and constituted excessive force in violation of Michalski's Fourth Amendment rights. See *Baker*, 471 F.3d at 607-09.

Moreover, the right of a surrendered person to be free from such force was clearly established by Sixth Circuit case law before this incident occurred. See *id.* at 608-09.

The following excerpt from *Baker* illustrates that the genuine issues of material fact that exist preclude the entry of summary judgment:

1. Troy Baker

> Viewing the record in the light most favorable to Troy Baker, we hold that he has set forth facts sufficient to establish a genuine issue of material fact as to whether Officer Taylor used excessive force in arresting him on December 15, 2002. Baker alleges that when Officer Taylor followed him to the bushes, he came out from behind the bushes with his hands straight up in the "surrender" position. At this point, according to Baker, Officer Taylor struck Baker in the head with his asp [(i.e., baton)], knocking Baker to the ground. Officer Taylor then struck Baker in the knee, yelling "[t]hat's for running from me."
>
> Because Baker had surrendered before being struck, a reasonable jury could conclude that Officer Taylor's strike to Baker's head was unjustified and excessive. By raising his hands in the surrender position, Baker arguably showed that he was unarmed, was compliant, and was not a significant threat to Officer Taylor's safety. A reasonable factfinder could therefore find that Officer Taylor's strike to Baker's head was unwarranted and unreasonably severe. Moreover, a jury could find that Officer Taylor acted unreasonably in striking Baker's knee after Baker had fallen to the ground. We have held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law. *See, e.g., Shreve v. Jessamine Cty. Fiscal Court,* 453 F.3d 681, 687 (6th Cir. 2006); *Champion,* 380 F.3d at 902 (citing cases); *see also Phelps v. Coy,* 286 F.3d 295, 301 (6th Cir. 2002) ("[T]here was simply no governmental

interest in continuing to beat [plaintiff] after he had been neutralized, nor could a reasonable officer have thought there was."). At the time he was struck in the knee, Baker had surrendered and had been neutralized by Officer Taylor; the strike to Baker's knee was unjustified and gratuitous. Furthermore, Officer's Taylor alleged statement after striking Baker's knee – "[t]hat's for running from me" – shows that the purpose of this hit was not to subdue Baker, but rather to punish him. *See Pigram v. Chaudoin,* No. 06-0378, 2006 WL 2860773, at *3, 2006 U.S.App. LEXIS 25073, at * 10 (6th Cir. Oct. 5, 2006) (unpublished) (noting that officer's slap to plaintiff "cannot reasonably be construed as a means of subduing Pigram" where the officer's stated justification for the slap was because the plaintiff had a "smart-ass mouth").

That Baker was not handcuffed at the time he was struck does not preclude a finding of unreasonableness. *See Tapp v. Banks,* 1 Fed. Appx. 344, 350 (6th Cir. 2001) (unpublished) ("[I]t is not objectively reasonable for an officer dealing with an essentially compliant person, to strike the person's legs twelve to fifteen times in the absence of resistance."). Moreover, that Baker received one strike to the head and one to the knee from Officer Taylor's asp – in comparison to the numerous punches and head slams at issue in *Phelps* or the repeated strikes to the leg in *Tapp* – does not necessarily render Officer Taylor's behavior reasonable. *See Pigram,* 2005 WL 2600216, at *3, 2006 U.S.App. LEXIS 25073, at *9 (holding that a single slap, administered after the plaintiff had been subdued, under specific circumstances, may constitute a Fourth Amendment violation). Finally, that Baker had attempted to evade arrest does not *608 preclude his claim of excessive force against Officer Taylor or render Officer Taylor's use of his asp reasonable. *See Shreve,* 453 F.3d at 687 (holding that strikes to plaintiff's back and knee are unreasonable where plaintiff was already incapacitated, despite plaintiff's prior attempt to avoid detection by police). A jury could therefore find that Officer Taylor acted unreasonably in striking Baker's head and knee and used excessive force in violation of Baker's Fourth Amendment rights during the arrest on December 15, 2002.

The next inquiry is whether Baker's right to be free from such strikes was "clearly established" at the time of the incident. We conclude it was. We have noted recently that "[c]ases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Shreve,* 453 F.3d at 688 (citing cases). Although *Shreve* post-dated Baker's arrest by four years, there was ample case law in this circuit to give notice to Officer Taylor that Baker had a constitutional right to be free from gratuitous strikes to the head and knee. For example, *Phelps* – which held that a police officer has no governmental interest in repeatedly striking a criminal defendant after the defendant has been neutralized – was released on April 10, 2002, eight months before Baker's arrest. *Phelps,* 286 F.3d at 301-02. In *Adams v. Metiva,* 31 F.3d 375 (6th

Cir. 1994), we likewise held that the use of force on a suspect after he had been incapacitated by mace is excessive force as a matter of law. *Id.* at 386; *see also McDowell v. Rogers,* 863 F.2d 1302, 1307 (6th Cir. 1988) ("[O]ur court has repeatedly found that a totally gratuitous blow with a policeman's nightstick may cross the constitutional line...."). Because there was significant Sixth Circuit case law support for Baker's right to be free from gratuitous strikes to his body, qualified immunity is not an available defense for Officer Taylor.

2. Jesse Snader

Viewing the facts in a light most favorable to the non-moving party, Jesse Snader was surrendering at the time that Officer Taylor struck him with his baton. In light of this action, he has alleged facts sufficient to establish a genuine issue of material fact as to whether Officer Taylor used excessive force in arresting him on October 23, 2003. Snader claims that Officer Taylor struck him on the back of his head while chasing Snader, after Snader had announced that he was slowing down. After striking Snader, Officer Taylor allegedly tackled him and sat on Snader's back with a choke hold, while other officers caught up and subsequently struck Taylor in his legs.

Defendants argue that Snader had not surrendered at the time that he was struck by Officer Taylor because, although he announced that he was stopping, he had yet to come to a complete stop. We disagree. We find it particularly important that in this case, Snader allegedly yelled "I'm stopping!" in response to Officer Taylor's instruction that he would shoot Snader if he did not stop. Snader's alleged response shows that he was compliant with Officer Taylor's order and in the act of surrendering when struck by Officer Taylor. A jury could therefore find that Officer Taylor's use of his asp was unjustified and gratuitous.

We also find it significant that Officer Taylor struck Snader on the head. We have noted repeatedly that a blow to an individual's head may constitute excessive force, *see, e.g., Bultema v. Benzie County,* 146 Fed. Appx. 28, 36 (6th Cir. 2005) (unpublished); *Phelps,* 286 F.3d at 302; *Davis v. Bergeon,* No. 98-3812, 1999 WL 591448, at *4, 1999 U.S.App. LEXIS 17984, at *12-13 (6th Cir. July 27, 1999) (unpublished), and in the circumstances alleged by Snader, Officer Taylor's strike to such a sensitive and vitally important part of Snader's body was objectively unreasonable. Even if we were to agree with defendants that Officer Taylor's use of his asp was necessary to subdue Snader – and we do not – Officer Taylor could have struck Snader in another, less sensitive part of Snader's body.

Because a jury could find that Snader was surrendering at the time he was struck in the head, we likewise conclude that Officer Taylor's use of his

5

asp was gratuitous. As we discussed above, Snader's right to be free from a gratuitous strike to the head was clearly established at the time of this incident. *See, e.g., Phelps,* 286 F.3d at 301-02; *McDowell,* 863 F.2d at 1307. Officer Taylor, therefore, may not avail himself of qualified immunity for the Snader incident.

*Baker*, 471 F.3d at 607–09 (footnotes omitted).

Michalski's excessive force claims survive summary judgment except for under the "duty to protect"/"failure to intervene" theory. Because the use of force lasted no more than approximately thirty seconds, Michalski cannot show that Cates – or Sonstrom – had an opportunity to intervene. *See Burgess v. Fischer*, 735 F.3d 462, 475-76 (6th Cir. 2013) (collecting cases).

### B. Michalski's Municipal Liability Claim Against the City of Taylor Fails as a Matter of Law

Michalski's claim against the City is based on "three previous 'incidents' in which [Cates] was sued for violating a citizen's constitutional rights." Michalski says the City ratified Cates's behavior because it never disciplined him for those prior alleged incidents.

Cates was dismissed from each of the three lawsuits. Because each of the suits resolved in Cates's favor, the City's failure to discipline Cates – as well as any allegation that it failed to supervise or train Cates – is of no consequence.

Michalski falls far short of demonstrating a viable municipal liability claim against the City. His claims against the City fail as a matter of law.

### III. CONCLUSION

The Court: (1) **DENIES** Sonstrom's motion for summary judgment; (2) **GRANTS** Cates and the City's motion with respect to the City and **DENIES** it with respect to Cates (except for on the duty to protect theory); and (3) **DISMISSES** the City from the case.

6

**IT IS ORDERED**.

                                                s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated:  October 5, 2018